No. 3413

Second Circuit

## BARNES v. SHREVEPORT RAILWAYS COMPANY

(November 8, 1928. Opinion and Decree.)

George T. McSween, of Shreveport, attorney for plaintiff, appellant.

Wise, Randolph, Rendall and Freyer, of Shreveport, attorneys for defendant, appellee.

ODOM, J. This is a damage suit brought by the plaintiff against the Shreveport Railways Company, a corporation which operates electric street cars in the city of Shreveport. The plaintiff alleges as a cause of action against the defendant company that on the 22nd day of March, 1927, she was a passenger for hire on one of defendant's street cars, and that in getting off said car at the front end she stepped from the street car to the steps, and, as she did so, the motorman closed the door of said car, catching her right foot in the said car door and step, throwing her against the pavement. In paragraph 7, it is specifically alleged that the motorman was negligent "in closing the door and starting the said car before petitioner had had a reasonable time to get off said car and steps."

The defendant, in answer, specifically denied any negligence on the part of the motorman and, in the alternative, plead that if it should be held that the defendant company, through its employees, was guilty of any negligence whatever, plaintiff's action is barred by her own contributory negligence in not taking proper care in alighting from said street car, and in

not making the proper observations as she left the car, and in walking in such a manner as to result in said accident.

There are only questions of fact involved in this lawsuit, for it is admitted by defendant that the plaintiff, being a passenger for hire on one of its street cars, it owed to her the highest degree of care and caution in transporting her and seeing that she had an opportunity to alight from the street car in safety. So that the only question presented for our determination is whether the motorman in charge of the street car was negligent in closing the door and starting the car before plaintiff had time to safely alight therefrom.

The plaintiff, as a witness in her own behalf, testified that, as she approached the street crossing at which she desired to stop, she signaled to the motorman to stop the car and that he did so; that she stepped from the street car through the open door down to the car step, which the testimony shows is about sixteen (16) inches above the street, and that, as she was in the act of stepping down upon the street, and before she had gotten off the step, the motorman closed the door and started the car in such manner as to catch her right food between the step and the car, thereby tripping her and causing her to fall with great violence to the street, which fall produced injuries from which she suffered greatly.

The testimony shows that the door of the street car is opened and closed by the motorman, who occupies a seat in the front end of the car, by means of a lever which he operates without leaving his seat. It also shows that the step on the outside of the street car and opposite the door is automatically lowered as the *door is* opened, and that, as the door is closed, the step is at the same time raised.

The burden of plaintiff's contention is that the motorman attempted to close the door and raise the step before she had time to fully alight therefrom, and that, in doing so, he caused her foot to be caught between the step and the car, causing her to trip and fall. She alleged and, on examination as a witness, testified that the motorman started the street car before she had time to alight therefrom, but she seems to lay stress in her testimony upon the fact, as she alleges, that it was the raising of the step and the catching of her foot which caused her to trip and fall.

The plaintiff, to corroborate her statements, introduced two (2) witnesses, Mrs. Brossette, and a man by the name of Walter Bagley. These witnesses testified that they were not far from the crossing at the time the accident occurred and that, while they did not see the plaintiff as she alighted from the car, because they were standing on the opposite side of the car from the door, but they testified that they did see her about the time she fell upon the street. Their testimony, therefore, throws no light upon the point at issue, which is whether the motorman closed or attempted to close the door and elevate the step before the plaintiff had sufficient time to alight therefrom. So that on the main point at issue, plaintiff's testimony is wholly uncorroborated.

As against the testimony of the plaintiff, the defendant called its motorman, Mr. J. W. Crain, who was operating the street car on that occasion, its conductor, Mr. J. C. Alford, who occupied a place on the platform at the rear end of the street car, and also some seven or eight persons who were passengers on the car at the time of the accident.

Mr. Crain, the motorman, testified that he was going slowly at the time the plaintiff signaled him to stop and that he

stopped and opened the door for her to alight. He says that she did get off the car in safety and that he made no attempt whatever to close the door and elevate the car step as she was alighting from the car, and that, as a matter of fact, he did not close the door or attempt to do so until sometime after she had fallen. Mr. Crain further testified that, after the plaintiff had gotten off the street car and was on the pavement, she seemed to sit down for some reason which he could not explain, and that she attempted to get up and fell the second time to the street; and it seemed to him, from the way she acted, that something had "struck her from the inside."

Mr. Alford, the conductor on the street car, stated that he saw nothing of the accident, but that he is positive that the motorman did not start the car after the door was opened for the plaintiff to alight.

To the same effect is the testimony of Paul Rushing and Mrs. J. E. Levasseur, who were not passengers on the car, but saw the accident; and of Mrs. J. L. Cotton, Mrs. C. M. Christian, Sr., Mrs. C. G. Peyton, Mrs. R. R. Garrard, Mrs. G. D. Rushing and Mr. J. S. Hollingsworth, each of whom was a passenger on the street car at the time of the accident. Not one of the witnesses who was a passenger on the car was able to state positively that the motorman made no attempt to close the door and raise the step before the plaintiff had time to alight therefrom, as nearly all of them were not in position to see precisely what was done; but these passengers on the car, without a single exception, testified positively that the car did not start after the door was opened to permit the plaintiff to alight, so that the tesimony of the plaintiff that the motorman did start the car before she had time to step to the sidewalk is contradicted by at least eight (8) witnesses, besides the motorman and the conductor.

Mrs. Levasseur testified that she saw the accident from her residence, which is about half a block away; that she could see the door of the car and was looking at the time the plaintiff alighted therefrom, and that the car did not move, and, further, that the plaintiff stepped down to the pavement and, after getting to the pavement, fell.

Paul Rushing, who was standing about 125 or 150 feet away, says he saw the car come to a stop, saw the plaintiff get off and saw her fall, and stated positively that the street car did not move, and that the door and the step were not moved before the plaintiff was safe on the pavement. The testimony of Mrs. Levasseur is criticized by counsel for plaintiff on the ground, as he states, that she could not see from her residence on account of certain obstructions in the way of trees and shrubbery; but her testimony is that there were no leaves on the trees at that time, it being in the month of March, and her testimony on that point is corroborated by another witness who says that he went to Mrs. Levasseur's residence on the day following and viewed the place of the accident from the room in the house where she says she was when she saw it.

The testimony of Paul Rushing is criticized and, to some extent, is impeached. Mrs. Gamble and Mrs. Bryant both say that Rushing came out of an alley into the street after the accident happened, and, therefore, could not have seen it.

The defendant called as witnesses, Mr. Walter Smith, Superintendent of the Slattery Building, in the City of Shreveport, and Mr. A. J. Hughes, also a building superintendent, who had together inspected the street car on which plaintiff was riding, as well as other cars having doors and steps operated by a lever, subsequent to the date of the accident. These witnesses testified

that they were familiar with the mechanical device used to open and close street car doors, such as are used by the defendant company, and they testified that, by actual demonstration, it was found that the doors can not be closed and that the steps can not be elevated while there is any appreciable weight upon the step, their testimony being to the effect that, in order for the motorman to be able to close the door and elevate the step, the closing of the door and the elevating of the step being simultaneous, the person alighting from the car must be entirely off the step. They state, however, that it would be possible in their opinion for the motorman, with considerable exertion, to operate the lever so as to close the door if there was on the step only a very slight pressure or weight. However, Mr. Smith stated that with one of his feet or legs resting upon the step the door could not be closed, and Mr. Hughes testified that with his hand resting upon the step, accompanied by some little pressure, the door could not be closed.

Our conclusion is that, even if the testimony of Mrs. Levasseur and Paul Rushing be eliminated entirely, the plaintiff has failed to make out her case in that she has failed to establish any negligence whatever on the part of defendant's employees.

The fact that the plaintiff did fall and was injured is undisputed. As to what caused her to fall, there is no testimony except her own, but, as her theory of the case is overcome by the overwhelming weight of the testimony on the other side, we must reject her theory.

As a theory as to what caused the plaintiff to fall, counsel for defendant have suggested that the plaintiff probably became sick or dizzy and fell for that reason. The testimony shows that the plaintiff was two months advanced in pregnancy at that time, and the testimony of Dr. Sanderson and Dr. Crain is to the effect that dizziness, nervousness, weakness and nausea are natural results of such condition, and, from their testimony, we think it not unreasonable to assume that, under such circumstances, the plaintiff became weak and dizzy and that, as a consequence, fell, after alighting from the car.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed with costs in both cases.